Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

District of

Division

|  |  |
|---|---|
| Helen Humphries | Case No. ___SAG-21-66___ |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint.* *If the names of all the plaintiffs cannot fit in the space above,* *please write "see attached" in the space and attach an additional* *page with the full list of names.)* | Jury Trial: *(check one)* ☒ Yes ☐ No |
| -v- | |
| Department of Public Safety and Correctional Services | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the* *names of all the defendants cannot fit in the space above, please* *write "see attached" in the space and attach an additional page* *with the full list of names.)* | |

*[stamp:] JAN 08 2021 — U.S. BANKRUPTCY COURT DISTRICT OF MARYLAND — 2021 JAN -8 PM 4:23 — BALTIMORE-NIGHT BOX*

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I.    The Parties to This Complaint**

**A.    The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Helen Humphries |
| Street Address | 1210 N. Longwood Street |
| City and County | Baltimore |
| State and Zip Code | Maryland 21216 |
| Telephone Number | 410-361-1489 |
| E-mail Address | Evanghumphries@yahoo.com |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**B.    The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Dept of Public Safety & Correctional Services |
| Job or Title *(if known)* | |
| Street Address | 300 Joppa Road, Suite 1100 |
| City and County | Towson |
| State and Zip Code | Maryland 21286 |
| Telephone Number | 410-339-6500 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

C.     I believe that defendant(s) *(check one)*:

     ☒     is/are still committing these acts against me.

     ☐     is/are not still committing these acts against me.

D.     Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

     ☐     race     _____

     ☐     color     _____

     ☐     gender/sex     _____

     ☐     religion     _____

     ☐     national origin     _____

     ☒     age *(year of birth)*     1956     *(only when asserting a claim of age discrimination.)*

     ☐     disability or perceived disability *(specify disability)*

     _____

E.     The facts of my case are as follows. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Sometime around June of 2019, I was assigned a permanent supervisor by the name of Cathy Harris. She was promoted from senior agent to supervisor when she took over the unit that I was in. Ms. Harris targeted me from the onset without a reason that I was aware of. She constantly challenged me unjustifiably on various issues relevant to policy and procedure, pressured me in to performing incorrect procedures that I knew were wrong such as in Justice Reinvestment, strived to reduce me to incompetency by marking up work that I had submitted to her and argued over semantics, failed to adequately assist me with getting my caseload scanned for telework, had me doing unnecessary work to create a backlog for me, lied to me on occasion regarding work, accused me of refusing to be told what to do whenever I asked her about conflicting procedures, withheld CS Control # 0382274A; Tshon Butler's Informative Report dated 09/11/19 from the court, and filed Paul Nixon's 10/16/19 report to the court without a supervisor's signature; CS Control # 0377043A. (1) Former supervisor Cathy Harris sabatoged my work. She deliberately witheld a report from the court that was pertinent to allegations of violation of probation, she refused to properly assist me with transitioning to telework, she had me to schedule a home visit unnecessarily that she had already conducted, knowing that I do not drive, and she forced me to adhere to incorrect policy and procedures. Former supervisor Cathy Harris was frequently wrong about some policies and procedures when she interacted with me. However, she refused to accept that she was wrong and utilized her position as supervisor to overpower me about them. Additionally, former supervisor Cathy Harris intentionally overlooked policy and procedure whenever I asked her about forcing me to follow incorrect procedures and insisted that I process work incorrectly. Furthermore, Ms. Harris neglected to meet with me at the instructions of regional Administrator Andrew Eckstein about a case. (2) Ms. Cathy Harris tried to prevent me from executing the Justice Reinvestment model at work. It was signed into law by Governor Larry Hogan on 10/01/17. Interventions and sanctions according to Justice Reinvestment are to be utilized before requesting summons'and warrants unless a crime is heinous. Nevertheless, Ms. Cathy Harris gave me a hard time whenever I attempted to conduct interventions and impose sanctions on clients in lieu of submitting summons' and warrants to the courts per law. (3) Ms. Harris refused to remove Earned Compliance Credits from noncompliant clients per policy upon my request. (4) Ms. Harris harassed me about scanned cases and intentionally broke my book case in the process. Supervisor Cynthia Callan failed to address an unsafe working environment when notified about risk and failed to follow up on Earned compliance Credits per my request. Thus, I filed an EEO complaint on 10/15/19. (5) Director Martha Danner transferred me out of the building where I was working without a legitimate reason one month after I filed an EEO complaint. (6) Director Martha Danner failed to consider evidence that I presented to her to prove that Cathy Harris harassed me. During this time, I reached out to Director Danner and asked her to intervene in the problems that I was having with supervisor Cathy Harris. Shortly thereafter, she held a meeting with Ms. Harris and I. In the meeting, Director Danner appeared to have had preconceived ideas about me, was defensive and cut off most of my efforts to provide her with proof of what supervisor Cathy Harris had been doing to me. Also, she was somewhat short with me. When I informed her that State's attorney Sandra L. Johnson in Carroll County helped me with the case of Tshon Butler that supervisor Cathy Harris should have helped me with, she remarked sarcastically, "so she did you a favor." (7) Director Danner failed to correct former supervisor Cathy Harris' unbecoming shouting behavior that she portrayed in a meeting that she had with Ms. Harris and I in November of 2019. It was as though she already had her mind made up about transfering me before the meeting with her was held. There had been no previous attempts to help resolve the problems that I was having with former supervisor Cathy Harris. The first attempt to deal with my issue with Ms. Harris resulted in my transfer as if I had done something wrong. I was punished for informing EEO on 10/15/19 about discrimination in the workplace.

(See attached)

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

-2-

In November of 2019, I was transferred to supervisor Augustus Harris after I had filed an EEO complaint on 10/15/19. (8) Supervisor Augustus Harris retaliates against me and harasses me. He perpetuated the harassment and illegal treatment that I had received from my previous supervisor Cathy Harris. However, the harassment worsened after I was transferred to supervisor Augustus Harris. During our initial encounter, as my supervisor, (9) Supervisor Augustus Harris insulted me. He asked me to report to his office. Upon arrival, he stated, "I am not for any arguing and I am not trying to have a heart attack." Supervisor Augustus Harris never explained what these two comments meant. They not only pierced my heart but helped to set the stage for a hostile workplace with retaliation and harassment at the core. Everything deteriorated from that point on. My life at work became a living and unbelievable nightmare.

(10) Supervisor Augustus Harris constantly scrutinizes my work and seeks every opportunity to find fault with it. He returns my work to me oftentimes when there is nothing wrong with it. In addition, he frequently accuses me of submitting incomplete work. Then, when I review the work, I find that the work has been completed and has been noted in the case note system that a specific process has been completed.

To further harass me, (11) Supervisor Augustus Harris sabotages my work. This is done by withholding it longer than he should, failing to approve it in a timely manner, creating extra tasks to slow my progress, merely approving my work whenever I inquire about why it has not been approved after three or four months from submission and intentionally signing my work after reports of negligence and incomplete work have been reported. These statistics appear on the Division of Parole and Probation's printouts for Agents. (12) Supervisor Augustus Harris contributes to the release of false statistics regarding my data analytics printout by failing to approve my work in a timely manner.

-3-

This is attributed to the fact that Mr. Harris neglects to approve a great deal of my work when I initially submit it to him.  Therefore, much of it fails to receive his approval in a timely manner.  (13) Supervisor Augustus Harris intentionally delays approval of my work.  Thus, this tactic helps to justify giving me a lower-than-normal evaluation.  (14) Supervisor Augustus Harris gave me the lowest evaluation that I have had with Parole and Probation two months after I filed an EEO complaint.  He justifies this low rating by stating that the same thing happened to him with his supervisor Mr. Darryl Watkins and that he must work with me a little longer to determine the quality of my work.  (15) Supervisor Augustus Harris performed my evaluation after 30 days of supervising me without an exit appraisal.  Despite the fact that the quality of my work had not diminished, I still received a lower evaluation after I had filed my EEO complaint on 10/15/19.

(16) Supervisor Augustus Harris intentionally discredits my work. Additionally, he withholds it for several months after submission, ignores my requests to have cases processed in my absence, returns work for frivolous reasons and had me placed on administrative leave to encourage a backlog.

(17) On 04/30/20, supervisor Augustus Harris pulled me out of Earned Compliance Credit training intentionally.  After sitting in training for 24 minutes, he called me twice back-to-back.  This caused me to become disconnected from my virtual training because I answered his telephone call.  Supervisor Augustus Harris did this to get me to resend my spreadsheet for 04/29/20.  I was working on mandatory training.  Probation Agents must acquire 18 hours of training to maintain employment.

Regarding supervisor Harris' failure to process my work in a timely manner, I requested an explanation from his supervisor; Mr. Darryl Watkins on 05/29/20 via E-mail.  However, I was never

-4-

provided an explanation from him pertaining to this matter. (18) Supervisor Darryl Watkins failed to provide an explanation as to why supervisor Harris failed to complete my work timely. He simply said for me to discuss this matter with Mr. Augustus Harris when he returned from leave. (19) No meeting has ever been scheduled with management to address supervisor Augustus Harris' harassment, retaliation, unethical and illegal behavior towards me between November of 2019 and December of 2020 by any manager.

On 06/24/20, I requested to work at the 428 E. Preston Street Field office because of computer issues that I was having. However, when I attempted to obtain workspace there, I was informed by clerical staff Royce Marshall that Preston Street had exceeded their cap of 10 people and had more than 11 people working in the office on that day for Parole and Probation. Eventually, supervisor Darryl Watkins approved me to work at the Preston Street field office for four of the five hours that I had left to work on that day. When I arrived and signed in to work at 428 E. Preston Street, I was the 9th and final person to sign in to work on 06/24/20. Therefore, I discovered that (20) Clerical Royce Marshall lied about how many people were signed in to work on 06/24/20. For some reason, she tried to keep me from working in the office on that day. (21) Supervisor Augustus Harris contributed to a hostile work environment. It was like pulling teeth to get permission to work at the Preston Street office on 06/24/20 and he offered me no assistance with the problem. It took approximately one hour to receive permission to work at 428 E. Preston Street. (22) Supervisor Augustus Harris intentionally avoided intervening to resolve the conflict that I incurred about finding a workspace at Preston Street on 06/24/20.

On 06/29/20, I reported to 428 E. Preston Street to work, located an empty workstation and placed my jacket on the chair to claim it. I went to the lunchroom to heat up my tea. Then, I found an empty cubicle near the lunchroom and ate my breakfast there. I returned to the workstation that I claimed for

-6-

been ripped from my tablet. (27) While under the care of the Division of Parole and Probation, I was physically intimidated for a fourth time. Furious from the previous day's weird incidents, upset, provoked and feeling threatened, I contacted 911 to report destruction of state property. I did this because of the incidents which had occurred on 06/29/20 and 06/30/20 coupled with the fact that the environment in which I work at Preston Street had employees who I have observed looking as though they were under the influence of illicit drugs. Furthermore, some of these employees were observed digging and scratching in the workplace. At one time, I suggested to supervisor Doug McClure that a urinalysis may prove to be helpful at 428 E. Preston Street. This was suggested because of the unprofessional countenance of some of the staff at the time. Additionally, the Preston Street field office is known to have had several thefts to occur by employees within the workplace. Oftentimes, this included the theft of large sums of money, an agent's credit card and an agent's wallet. A new agent who had come out of the academy had her wallet stolen soon after she arrived at the Preston Street field office. Therefore, because of the history of criminal behavior and possible use of illicit drugs in the workplace, I did not take any chances with my broken tablet key and called 911.

I called the police regarding my defaced tablet key because I am responsible for the care of my state issued tablet and it had been compromised. Second, I called the police because I felt threatened. I have suffered with computer problems more frequently after I was transferred to supervisor Augustus Harris. Moreover, I noticed a correlation between the volume of work that I complete and submit to him and an inoperable tablet. The more work that I produce, the more my tablet becomes inoperable. (28) The Division of Parole and Probation forced me to work with faulty equipment for over 5 months.

After I contacted 911 on 07/02/20, I went to the lunchroom to calm down. Officer Dandy responded and arrived at Parole and Probation located at 428 E. Preston Street. However, he was informed that I

-7-

was not there. This is not true because I was sitting in the lunchroom trying to calm down from having my tablet defaced. The security guard that was on duty on 07/02/20 found me in the lunchroom and informed me that Officer Dandy had arrived and left. (29) Staff at 428 E. Preston Street lied

to officer Dandy on 07/02/20 regarding my whereabouts. Then, supervisor Augustus Harris walked up to me as I walked toward the reception area to meet officer Dandy and handed me a card with his contact information on it. Furthermore, he stated that because I could not be located when officer Dandy arrived, he left. I asked Mr. Augustus Harris if anyone had attempted to page me over the PA system to speak with officer Dandy or if anyone had checked the sign in/sign out sheet to see if I had in fact left the premises. Nevertheless, he never responded. (30) Supervisor Augustus Harris failed to follow proper procedure to locate me for Officer Dandy at 428 E. Preston Street on 07/02/20.

Later in the day on 07/02/20, Officer Dandy called me. He stated that upon his arrival at 428 E. Preston Street; he was informed that I had left the office. Officer Dandy had been given false information about me.

In the afternoon of 07/02/20, I was called into a meeting with supervisors Augustus Harris and Darryl Watkins to address the problems that I had encountered in the Preston Street office on 07/02/20. (31) Supervisor Darryl Watkins failed to inform me that the 07/02/20 meeting with him was disciplinary. Supervisor Augustus Harris simply walked over to the workstation where I was working on that day and uttered, Mr. Watkins wants to speak with you. Therefore, I went into Mr. Watkins 'office along with Mr. Harris. (32) Supervisor Darryl Watkins failed to advise me of my right to union representation. I was not informed about my right to union representation in the meeting with supervisors Darryl Watkins and Augustus Harris. Then, Mr. Augustus Harris told a lie on me. He reported to his supervisor Mr.

-8-

Darryl Watkins that I had threatened to file charges against Director Martha Danner. This was not true. (33) Supervisor Augustus Harris lied on me about filing charges against Director Martha Danner. After I asked him about lying on me in the 07/02/20 meeting with his supervisor, Mr. Harris replied that he thought that I said that I was going to file charges against Director Martha Danner. (34) Supervisor Augustus Harris provided his supervisor with an uncertain allegation about me which led to my Administrative leave status on 07/02/20.

Supervisor Augustus Harris on 08/07/20 informed Regional Administrator Andrew Eckstein, Assistant Regional Administrator Michael Holliday and supervisor Darryl Watkins that he heard me on the telephone on 07/02/20 telling a police officer that I was going to file charges against the Director of Parole and Probation Martha Danner. This is a lie. (35) Supervisor Augustus Harris reported a conflicting allegation to Regional Administrator Andrew Eckstein, Assistant Regional Administrator Michael Holliday and supervisor Darryl Watkins on 08/07/20.

During the 07/02/20 meeting with supervisors Darryl Watkins and Augustus Harris, I was informed by supervisor Darryl Watkins that a referral to the Employees Assistance program had been recommended for me. He stated that this was done because I allegedly said in open space that I was going to press charges against Director Martha Danner. However, I declined the referral and informed supervisor

Darryl Watkins that I believed that it was inappropriate for me to seek assistance from EAP for retaliation, harassment, and unfair practices in the workplace. I also denied the allegation of filing charges against  Director Martha Danner.

Later, I received an Email from Regional Administrator Andrew Eckstein giving me an additional resource for treatment at Baltimore Crisis Response Inc.   This is a mental health treatment facility.

-9-

These referrals for treatment stemmed from my cry for help to combat retaliation, harassment, and illegal practices in the workplace. Thus, I believe that there is a concerted effort to discourage me from working and to force me into retirement. This has been attempted through 1 year of retaliatory acts and inappropriate pressure from supervisor Augustus Harris. There has been no effort on the part of upper management to prevent, stop or correct the harassment and retaliation against me for over 1 year. Despite notification to them via Emails and telephone calls, Mr. Harris continues to Harass and retaliate against me. (36) upper management failed to implement corrective action to end retaliation and harassment against me in the workplace upon notification. Management has never held a meeting with Mr. Harris and I to get to the root of the problem that we have been having in over 1 year. The retaliation and harassment from Mr. Augustus Harris have been going on since November of 2019.

Essentially, I have received Emails from upper management promising to investigate or look into a matter of concern that I had regarding harassment, retaliation and an unsafe work environment but no follow up has ever taken place. (37) Upper management failed to follow up on complaints about retaliation, harassment and an unsafe working environment.

I have served the state of Maryland faithfully for 35 years and have abided by the rules and policies of the state. Moreover, I have never been reprimanded while working anywhere. Nevertheless, all of my efforts to get internal assistance primarily with harassment and retaliation have either failed, been ignored, minimized or misconstrued. (38) Upper management failed to provide a solution for retaliation, harassment and an unsafe working environment.

As a result of the meeting with supervisors Darryl Watkins and Augustus Harris on 07/02/20, I was placed on 10 days of paid administrative leave. Thus, my caseload was profoundly affected. Also, I was never asked if I had any pending court dates in which case I did or pressing matters that needed

-10-

immediate attention while I was placed on leave.   (39) Upper management failed to inquiry about

pending court hearings and any other immediate concerns regarding my caseload before placing me on

administrative leave.   (40) Supervisor Augustus Harris failed to resolve all of the concerns with my cases

that were identified on 07/06/20 as needing immediate attention.

On 07/02/20, I made the comment to supervisor Augustus Harris that the events that led up to me

calling the police resembled witchcraft behavior.  I was simply referring to the fact that anyone who puts

a white substance on my desk, puts a gummy substance on my desk and rips the key off of my

tablet without a reason and not tell me was displaying witchcraft behavior and was evil. I made the

statement about witchcraft because of the strange tactic, evil intent and harm that this behavior

implies.

I believe that the mental health referral that was suggested to me was inappropriate.  Insinuating

that I need mental health treatment without a medical assessment threatens my reputation as a

respectable and healthy citizen within the Christian community.  (41) Supervisor Augustus Harris scarred

my reputation with false allegations coupled with a claim of mental illness against me.

Some of the reasons that I am having problems with supervisor Augustus Harris has to do with the fact

that I reported his poor work ethic to his supervisor Darryl Watkins as well as to upper management.  He

continues to neglect processing my work which is a large basis for my mid cycle and end of the cycle

appraisals.  Additionally, supervisor Augustus Harris still harasses me.  (42) Upper management

continues to ignore my plea for relief from retaliation and harassment.  (43) Supervisor Augustus Harris

lowered my December 2019 end of cycle review without the quality of my work diminishing.  Supervisor

Augustus Harris refuses to assist me with work related tasks whenever I reach out to him for assistance.

-11-

He continues to resist helping me. He interacts with me in a distant manner.  When I complain about his poor manner of handling my cases, he gets offended and retaliates against me.  Mr. Harris utilizes lies about me to tarnish my reputation as an honest state employee and citizen.  (44) Supervisor Augustus Harris deliberately refuses to assist me with accomplishing mandatory procedures within the Division of Parole and Probation upon request.

Assistant Regional Administrator, Michael Holliday asked me to meet with him on 07/23/20. However, initially, he neglected to tell me that this meeting could result in disciplinary action. Therefore, I agreed to cut my medical leave short to meet with him. I had no idea that I was under an investigation or was facing disciplinary action.  Mr. Holliday mentioned my right to union representation approximately 1 minute before he began to interview me.  Because I had no idea what I was facing and had been in an interview with him in the past, I told him that I felt comfortable speaking with him.

The 07/23/20 interview with Mr. Michael Holliday was about the 07/02/20 incident involving the destruction of my tablet key, an allegation that I threatened to file charges against Director Martha Danner and me calling the police.  (45) Assistant Regional Administrator Michael Holliday failed to notify me that I was engaging with him in a meeting that was disciplinary and failed to provide me with ample time to seek union representation.

During the meeting with Mr. Holliday on 07/23/20, I submitted to him a list of cases with the names and case numbers of 19 clients that I had submitted to supervisor Augustus Harris that he neglected to properly process.  He held some of these cases for 2-3 months before he acted.  Furthermore, Mr. Holliday stated that Mr. Harris told him that he tried to have a meeting with me and Mr. Watkins but that I had refused to meet with him.  This is another lie that supervisor Augustus Harris told and used

-12-

against me.  (46) Supervisor Augustus Harris provided Assistant Regional Administrator Michael Holliday with false information.

In conclusion, on 08/07/20, a mitigation conference was held.  I was notified on 08/06/20 while on sick leave via Email by Regional Administrator Andrew Eckstein at approximately 04:00 p.m. that I was scheduled to attend said mitigation conference.  I was never given any written information beforehand about what evidence existed relevant to the charges against me.  Also, I had no indication that I was facing disciplinary action until 08/07/20.  (47) Upper Management failed to provide me with a charging document and an adequate account of the charges launched against me relevant to the 07/02/20 incident.

During my 08/07/20 mitigation conference with, Regional Administrator Andrew Eckstein, Assistant Regional Administrator Michael Holliday, supervisors Darryl Watkins and Augustus Harris, supervisor Augustus Harris told lies on me.  In addition, he painted a picture of me as a deranged woman who demonstrated dangerous behavior in the workplace.  Also, Mr. Harris slipped and assumed the position of a psychiatrist and suggested that I was crazy without medical documentation to support his belief.  (48) Supervisor Augustus Harris accused me of having a mental illness without medical documentation which led to a level 1 reprimand.  (49) Supervisor Augustus Harris utilized a mental health claim to humiliate me in the workplace.  (50) Supervisor Augustus Harris alleged a mental health claim against me without medical proof.

I believe that the telephone call that I made to Governor Larry Hogan's office on 05/01/20 to obtain relief from retaliation and harassment prompted the decision to place me on Administrative leave on

-13-

07/02/20. On 05/01/20, I received an Email from Director Martha Danner threatening me with progressive disciplinary action after I had notified Governor Larry Hogan's office on the same day about retaliation and harassment.    (51) Director Martha Danna threatened me with progressive disciplinary action without a basis. (52) Director Martha Danner failed to provide me with a basis for progressive disciplinary action upon request.

Relevant to the mitigation conference that was held with me on 08/07/20, supervisor Augustus Harris changed his account of my charges.  Afterwards, Regional Administrator Andrew Eckstein found me guilty of threatening to file charges against Director Martha Danner and for calling the police on 07/02/20 to assist with my defaced tablet. (53) Regional Administrator Andrew Eckstein administered a level 1 reprimand based on conflicting information.

Supervisor Augustus Harris has defamed my character and has threatened my chances to continue appearing on Cathy Hughes' Radio One Christian program as a guest preacher.  I also run the risk of losing my opportunity to volunteer as a preacher at Future Care Nursing Home because of Mr. Harris' lies about my mental state.  Hence, these lies permeated the Division of Parole and Probation as well as outside of the agency.  Supervisor Augustus Harris' lies about me contributes a great deal to the hostile work environment that I am forced to work in as well as the humiliation that I must endure. (54)

# EEOC (INQUIRY) NUMBER: 531-2020-02890

## Inquiry Information

### REASON(S) FOR CLAIM

**Date of Incident (Approximate):** 07/02/2020

**Reason for Complaint:** Age - I am 40 years of age or older, Retaliation - I contacted a government agency to complain about job discrimination,

**Pay Disparity:**

**Location of Incident:** Maryland

**Submission (initial inquiry) Date:** 08/06/2020

**Claim previously filed as charge with EEOC?** No

**Approximate Date of Filing:** N/A

**Charge Number:** N/A

**Claim previously filed as complaint with another Agency?** No

**Agency Name:** N/A

**Approximate Date of Filing:** N/A

**Nature of Complaint:** N/A

### INQUIRY OFFICE

**Receiving:** Baltimore Field Office

**Accountable:** Baltimore Field Office

### APPOINTMENT

**Appointment Date and time:** 10/08/2020 01:00 PM US/Eastern

**Interview Type:** Phone

### APPROXIMATE DEADLINE FOR FILING A CHARGE: 04/29/2021

### POTENTIAL CHARGING PARTY

**First Name, Middle Initial:** Helen, P

**Last Name:** Humphries

**Street or Mailing Address:** 1210 N. Longwood Street

**Address Line 2:**

**City, State, Zip:** BALTIMORE, MD, 21216

**Country:** UNITED STATES OF AMERICA

**Year of Birth:** 1956

**Email Address:** evanghumphries@yahoo.com

**Home Phone Number:** (443) 449-7581

**Cell Phone Number:** (410) 361-1489

## RESPONDENT/Employer

**Organization Name:** DIVISION OF PAROLE AND PROBATION

**Type of Employer:** State or Local Government that I applied to, work for, or worked for

**Number of Employees:** 20 or more employees

**Street or Mailing Address:** 428 E. Preston Street

**Address Line 2:**

**City, State, Zip Code:** BALTIMORE,MD, 21202

**County:** Baltimore City

**Phone Number:**

## RESPONDENT CONTACT

**First and Last Name:**

**Email Address:**

**Phone Number:**

**Title:** Human Resources Director or Owner

## LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Street or Mailing Address:** 4750 Mount Hope Drive

**Address Line 2:**

**City, State, Zip Code:** 21215

**County:**

## POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:**  F

**Disabled:**  I have a disability

**Are you Hispanic or Latino?**  not hispanic or latino

**Ethnicity:**  Black or African American,

**National Origin:**  American(U.S.)

## Adverse Action(s)

Supervisor C. Harris harassed me by withholding reports, failing to assist me in getting a client apprehended, playing games about getting my caseload scanned and breaking my personal bookcase in the office.  These incidents occurred on 10/16/19, 10/04/19, 10/15/19 and 10/23/19.  In November of 2019, I was transferred to Supervisor A. Harris after I filed an EEOC complaint.  Shortly thereafter, he retaliated against me during our  initial encounter by insulting me, withholding my work, approving my work in a grossly untimely manner and having me placed on admin leave unnecessarily.  The incident dates are as follows:  11/2019, 12/16/19, 01/28/20, 02/05/20, 02/28/20, 03/04/20, 03/16/20, 03/27/20, 04/22/20, 04/24/20, 04/28/20, 04/29/20, 05/01/20, 05/06/20, 05/08/20, 05/11/20, 05/15/20, 05/19/20, 05/21/20, 05/28/20, 06/30/20, 07/02/20 and 07/06/20.  Additional retaliatory measures-leadership/staff: 05/01/20, 06/24/20, 07/01/20 and 07/02/20.

# Supplemental Information

### What Reason(s) were you given for the action taken against you?

In reference to my transfer in November of 2019, I requested intervention from the Director of Parole and Probation; Martha Danner.  I did this because I was having problems with my supervisor Cathy Harris.  However, after meeting with her and my supervisor, the Director decided that my transfer was necessary because she believed that I could not get along with my supervisor. Seemingly, the real problem was overlooked and ignored.  The truth is that I had filed an EEOC complaint on the state level on 10/15/19.  Shortly thereafter, I was transferred from my worksite.  Relevant to my new supervisor Augustus Harris failing to process my work in a timely fashion, I requested an explanation from his supervisor when he was on leave.  Nevertheless, I was never given an adequate explanation.  In terms of having been placed on 10 days of administrative leave, I was provided the explanation that this was done because I had been having a lot of issues in the office between 06/29/20 and 07/02/20.  I had called the police on 07/02/20 because someone had defaced the letter P on my tablet keyboard which was issued to me by

the state.  Also, because I said that the events of covert harassment toward me resembled witchcraft behavior, I was placed on 10 days of administrative leave on 07/02/20.  This resulted from the strange substances that had been placed on the work station desk where I was working for two consecutive days.

**Was anyone in a similar situation treated the same, better, or worse than you?**

During the fall of 2019, I complained about supervisor Cathy Harris and her mistreatment of me.  She tried to force me to follow incorrect policy and protocol within the Division of Parole and Probation through bully tactics.  Furthermore, I started screen shooting reports that I submitted to her because I received them back for corrections and they were worded different from what I had initially submitted to her.  Additionally, this supervisor told me around August of 2019 that I was going to cause her to become an alcoholic.  To further intimidate me, she criticized my reports because she did not like my opening statements and argued over semantics.  After I filed an EEOC complaint through the state on10/15/19, DPSCS Case Number 2019-10-01476, I was transferred to another building.  Shauna Bateman, Lesa Marks and Chemaine Alston filed action against Cathy Harris sometime in Febraury of 2020 for similar mistreatment as I had complained about.  My complaint against her led to a transfer.  As a result of the above-mentioned Agent's complaints about supervisor Cathy Harris, she was demoted back to Senior Agent.

**Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.**

Shauna Bateman-shauna.bateman@maryland.gov, Lesa Marks-lesa.marks@maryland.gov and Chemaine Alston-chemaine.alston@maryland.gov.  These Agents can support my claim of abuse and mistreatment by my previous supervisor Cathy Harris.  They filed action against her after I had filed action against her.  However, their action led to Cathy Harrison's demotion in May of 2020. Kesha Matthew-kesha.matthew@maryland.gov.  She is also a probation Agent who can support my claim of abuse and mistreatment by my previous supervisor Cathy Harris.  As to my current supervisor, I do not have any supporters.  Most staff can not believe what is going on between my supervisor Augustus Harris and I.  Anyone who could support me regarding Mr. Harris are his friends and stand to benefit from that bond.  These include those in my unit except Agent Shauna Bateman.  She was recently transferred in my unit in May of 2020 when our former supervisor Cathy Harris was demoted to Senior Agent in May of 2020.

## Please tell us any other information about your experience?

I have been experiencing technical problems with my computer from approximately February-July 30, 2020. I have had very little support getting my computer issues resolved from my supervisor. I continue to report computer issues to the IT team but with little results. My supervisor passes the buck regarding this issue. Furthermore, the field office where I work began teleworking around November of 2019. This was done because one of our main field offices closed and moved in the building where I am working. On occasion, because I had so many computer issues, I requested to work in the office. However, I met with great resistance to this request. I have also noticed a correlation between the amount of work that I produce and the inoperability of my tablet. The more work that I produce, the functionality of my tablet decreases. Placing me on administrative leave greatly improved my chances of becoming backlogged. When I requested action on cases that needed immediate attention in my absence, most of my request were either handled poorly or ignored. Overall, management has failed to intervene and assist me with seeking solutions to my computer issues. It appears that most of the covert harassment tactics that I have experienced are punitive. This is attributed to the fact that I filed an EEOC complaint at the state level on 10/15/19..

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## IV.   Exhaustion of Federal Administrative Remedies

A.      It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

10/09/20

B.      The Equal Employment Opportunity Commission *(check one)*:

☐      has not issued a Notice of Right to Sue letter.

☒      issued a Notice of Right to Sue letter, which I received on *(date)*      10/14/2020

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.      Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☒      60 days or more have elapsed.

☐      less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

I am asking the court to order that the retaliation and harassment that I have suffered from September of 2019 and am still suffering stop with strong penalty for failing to do so. Furthermore, I am asking the court to send a strong message to my employers that retaliation, harassment and discrimination will not be tolerated in any form in the workplace. My supervisor Augustus Harris continues to retaliate against me and harass me. He intentionally witholds my work and approves it anywhere from 3 to 4 months after I submit it to him. In addition, Mr. Harris intentionally contributes to incorrect statistics that appear on my case assignment by agent print out by deliverably approving my work late. This intrinsically has a negative impact on my evaluations. This act tarnishes my work ethic and is in plain view for upper management to observe. This is not good because it leaves the impression with upper management that I neglect to do my work. Therefore, I am asking the court to send a message to Mr. Harris that his position will not exempt him from punishment of the law if he is found guilty of retaliation and harassment. He does not believe that his unlawful behavior can be detected and does not take it serious. By lying on me and making false allegations against me, the relationship that I had with some of my co-workers has become strained. Additionally, Mr. Harris has tarnished my reputation as an upstanding and respectable citizen by downplaying my concerns in the workplace and suggesting that I have a mental illness without medical proof when I expose the injustice. This has truly defamed my character as a state employee and as a member of the clergy. As clergy, Mr. Harris' allegations threatens perception of my ability to lead people in the christian community. His false allegations are especially damaging to my reputation as a volunteer preacher at Future Care Nurshing home. To interact with and preach to its residents, I must be of a sound mind. In addition, my reputaion as a guest preacher on Cathy Hugh's Radio One christian station is threatened. I have been caused severe emotional stress in the workplace for over 1 year. Moreover, I have been forced to work in a hostile environment and in humiliation because of Mr. Augustus Harris' harassment and retaliation tactics. I am requesting that I am rendered the maximum amount of compensatory and punitive damages for my claim of retaliation, harassment and discrimination. I believe that I should be compensated for the cruel and intentional treatment of harassment and retaliation that I have experienced for over 1 year in the workplace. Also, the fact that upper management knew about the allegations and did nothing to stop it shows disregard for the law. By ignoring my plea for help with retaliation and harassment in the workplace, management empowered both former supervisor Cathy Harris and supervisor Augustus Harris to abuse me. Support by supervisors at work in getting the job done has diminished because of Mr. Harris' lies about my mental state, my resistance to retaliation and harrassment and for speaking out against it. I was extremely traumatized by having received a level 1 reprimand on 07/02/20 to the point where I had to take sick leave for four days to recover from its effects. The implication behind the level 1 reprimand is that I could ultimately get fired. This thought has haunted me and has caused me a lot of anxiety. This is because, I will never know when the next lie will increasingly seek to harm me and attempt to get me fired for malicious reasons. This is why getting to the truth is so crucial for me. I am still scarred by the unjust act of the level 1 reprimand because of the lies that it was based upon. I force myself every day to function at the level that I am accumstomed to working. Because I have always maintained a level of excellence in the workplace, I have not adjusted to the level 1 reprimand. It is incompatible with my 35 years and 8 months work ethic. No consideration was given to my good work record before my 07/02/20 punishment or my 08/07/20 punishment. Additionally, no manager has ever met with me and Mr. Harris to address the retaliation and harassment that I have received and continue to receive from him. The only action that I have received from upper management is the level 1 reprimand. This is contrary to the concept of progressive disciplinary action. There has been no other charges against me prior to the level 1 reprimand. I have been intentionally and severely abused in the work place for standing up for what is right and for filing complaints of retaliation, wrongdoing and discrimination. I am 64 years old and have worked for the State of Maryland for 35 years and 8 months without ever getting a level 1 reprimand. I am a veteran of the U.S Army who have learned to endure difficult situations and not break. However, it is really getting hard to do. Without anyone standing behind me with truth, my work environment has become a hostile nightmare. This is attributed to the fact that none of my employers have reached out to terminate retaliation and harassment againt me in the workplace. They are aware of it but stand by and watch me suffer. I have an excellent work ethic and am a team player. However, I feel like an isolated worker who receives a great deal of resistance when I attempt to get the job done since filing my EEO complaint. I have worked for the Division of Parole and Probation for 26 of my 35 years and 8 months total state service. Additionally, I have done nothing except try and help criminals turn their lives around. Because of the injustice against me at work, I am wounded emotionally. I struggle everyday to overlook retaliation and harassment in the workplace so that I may supervise my caseload adequately and help to uphold public safety. I have lost the zeal to come to work that I use to have because I never know what may happen to me in terms of retaliation from day

to day. The only incentive that I have in coming to work is that I enjoy helping criminals become law abiding citizens. Otherwise, I would have given up by now. But, I can not let my clients down. Many of them depend on my encouragement to get through probation. Now, I have to put on a false face to get through a day and to keep my client's from observing my emotional pain. On the other hand, I am treated like a criminal. I can not erase from my mind the day that I was given a level 1 reprimand after 35 years of faithful state service. I felt like the criminals that I attend violation of probation hearings for. I felt as though all of my hard work within the Division of Parole and Probation has all been done in vain. I continue to have my rights violated by those who get paid to run the Division of Parole and Probation and who has vowed to protect its employees. When I complained about harassment in November of 2019, I was transferred from my office. However, a younger Agent who had not filed an EEOC complaint received a favorable outcome for the same type of complaint that I had made. I believe that double standards were applied to my situation. The younger Agent, Lesa Marks complained about former supervisor Cathy Harris' mistreatment of her as I had done. As a result, Ms. Harris was demoted. Finally, I have been victimized in the workplace via lies, harassment, retaliation and inconsistent allegations in an effort to punish me for seeking the assistance of EEOC. Many supervisors and upper managers have banned together to teach me a lesson about reaching out for help against retaliation and harassment in the workplace. They sweep what has been and is done to me under the rug. Then, they instill fear in employees by making an example out of me for speaking out against retaliation and harassment. This tactic has been successful in deterring other employees from speaking out and telling the truth.. I have refused to internalize managerial fear. I have chosen the law to help put a stop to these gruesome acts of retaliation, harassment and discrimination. Hence, I am also asking the Court to help me regain peace in the workplace so that I may work until it is time for me to properly retire as opposed to premature retirement.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        1/8/2021

Signature of Plaintiff        _Helen Humphries_

Printed Name of Plaintiff        Helen Humphries

### B.    For Attorneys

Date of signing:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

| | |
|---|---|
| Signature of Attorney | |
| Printed Name of Attorney | |
| Bar Number | |
| Name of Law Firm | |
| Street Address | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address | |