**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **HELEN HUMPHRIES,** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-21-0066 |
| | * | |
| **DEPARTMENT OF PUBLIC SAFETY** | * | |
| **AND CORRECTIONAL SERVICES,** | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Helen Humphries, who is self-represented, filed this employment discrimination lawsuit against her employer, the Department of Public Safety and Correctional Services ("DPSCS"). DPSCS has filed a Motion to Dismiss the Complaint ("the Motion"), ECF 10. Plaintiff filed an opposition, ECF 12. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated herein, the Motion will be granted, and Plaintiff's claims will be dismissed without prejudice.

**I.    FACTUAL BACKGROUND**

The facts below are derived from the Complaint and are taken as true for purposes of this Motion. ECF 1. Plaintiff has worked for the State of Maryland for 35 years. ECF 1 at 11. In or around June of 2019, Cathy Harris became Plaintiff's supervisor at DPSCS. *Id.* at 4. Ms. Harris mistreated Plaintiff and other employees under her supervision.[1] *Id.* at 4. In response to Ms.

---

[1] As will be discussed at greater length, *infra*, Plaintiff does not appear to allege that Harris's mistreatment resulted from age-based animus. *See* ECF 1 at 4 ("Ms. Harris targeted me from the onset without a reason that I was aware of."). In fact, the Complaint expressly alleges that younger employees were subjected to "similar mistreatment as I had complained about," eventually resulting in Ms. Harris's demotion. *Id.* at 19.

1

Harris's actions, Plaintiff filed an internal EEOC complaint on October 15, 2019. *Id.* at 19. Shortly thereafter, Plaintiff was "transferred to another building" and placed under the supervision of a new supervisor, Augustus Harris. *Id.* at 5, 19. Also during that same month, the field office began teleworking. *Id.* at 20. Plaintiff often experienced technical issues and does not feel she received adequate support from IT staff or her supervisors. *Id.*

Plaintiff describes her work experience under Mr. Harris as "a hostile workplace with retaliation and harassment at the core." *Id.* at 5. She alleges that he scrutinizes her work and fails to approve it in a timely manner, resulting in her receipt of less favorable statistics and performance metrics. *Id.* at 5-6. He gave her a low performance evaluation just 30 days after becoming her supervisor, stating "he must work with [her] a little longer to determine the quality of [her] work." *Id.* at 6. Plaintiff complained to Mr. Harris's supervisor, Darryl Watkins, about his failure to process her work in a timely manner, but Mr. Watkins did not intervene. *Id.* at 6-7.

On or about May 1, 2020, Plaintiff called the office of Maryland Governor Larry Hogan, seeking "to obtain relief from retaliation and harassment." *Id.* at 14. Later that same day, Director Martha Danner emailed Plaintiff threatening her with progressive disciplinary action. *Id.* at 14-15.

In late June of 2020, Plaintiff asked to work at a field office at 428 E. Preston Street because she was having computer issues. *Id.* at 7. Eventually, she received approval to work in that office, although she did not believe she was treated properly by Mr. Harris or a clerical employee, Royce Marshall in attempting to arrange for the workspace. *Id.* During her time in the office, however, the letter "P" key was removed from her work tablet, and she felt physically intimidated. *Id.* at 8, 18. Someone also put white powder and gummy substances on the desk where Plaintiff was sitting. *Id.* at 10. On July 2, 2020, Plaintiff called 911 to report the destruction of state property (her work

tablet), and because she believed some of her co-workers "were under the influence of illicit drugs." *Id.* After calling the emergency number, Plaintiff went to the lunchroom to calm down. *Id.* While Plaintiff was in the lunchroom, one of her co-workers told the officer who responded to the 911 call that she was not present. *Id.* at 8-9.

Also on July 2, 2020, Plaintiff told Mr. Harris that the events in the Preston Street office leading to her emergency call "resembled witchcraft behavior." *Id.* at 12. Later that day, Plaintiff was called into a meeting with her supervisors, Mr. Harris and Mr. Watkins. *Id.* at 9. She was not informed of her right to union representation and did not realize it was a disciplinary meeting. *Id.* Mr. Harris told Mr. Watkins that Plaintiff had threatened to file charges against Ms. Danner. *Id.* at 10. She had not done so. *Id.* Mr. Harris later repeated this false allegation to regional administrators. *Id.*

At the July 2, 2020 meeting with Mr. Harris and Mr. Watkins, Mr. Watkins informed Plaintiff that a referral to the Employees Assistance Program (EAP) had been recommended for her. *Id.* She declined the referral but later received an email from a regional administrator giving her a resource for treatment at Baltimore Crisis Response Inc., a mental health facility. *Id.* After the meeting on July 2, 2020, Plaintiff was placed on 10 days of paid administrative leave, which caused a backlog in her caseload. *Id.* at 11. Mr. Harris did not attend to the cases Plaintiff had identified as requiring immediate attention during her period of administrative leave. *Id.*

On July 23, 2020, an Assistant Regional Administrator, Michael Holliday, asked Plaintiff to meet with him, but again did not state that the meeting could result in disciplinary action. *Id.* at 13. About one minute before the interview began, Mr. Holliday mentioned Plaintiff's right to union representation, but she told him she was comfortable speaking with him. *Id.* The meeting

was about the destruction of the tablet key, the telephone call to the police, and the allegation that Plaintiff had threatened to file charges against Ms. Danner.  *Id.*

On August 7, 2020, a mitigation conference was held.  *Id.*  During that conference, Mr. Harris accused Plaintiff of having a mental illness.  *Id.*  Following the conference, Regional Administrator Andrew Eckstein found Plaintiff guilty of threatening to file charges against Ms. Danner and of calling the police on July 2, 2020.  *Id.* at 14.  He administered a level 1 reprimand.  *Id.*  Plaintiff was "extremely traumatized" by the reprimand "to the point where [she] had to take sick leave for four days to recover from its effects."  *Id.* at 22.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221, 133 S. Ct. 1709, 185 L.Ed.2d 758 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See In re Birmingham*, 846 F.3d at 92.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). But a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations

allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), cert. denied, 566 U.S. 937, (2012).

Because Plaintiff is self-represented, her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civil Action No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."); *aff'd* 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

### III.  ANALYSIS

Plaintiff alleges discrimination based on her age. Her complaint, liberally construed, arguably presents claims of a hostile work environment, age-based discrimination, and retaliation. Each will be addressed in turn.

### A. Hostile Work Environment Claim

Plaintiff alleges that she has been subjected to a hostile work environment. However, not every highly unpleasant or even abusive workplace amounts to a "hostile work environment" under the law. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, [or] a routine difference of opinion and personality conflict with [one's] supervisor" do not suffice) (internal citations and quotations omitted); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (finding a workplace dispute and "some perhaps callous behavior by her superiors" insufficient for a plaintiff to establish severe or pervasive activity, even at the Rule 12(b)(6) stage); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (determining that "disrespectful, frustrating, critical, and unpleasant" workplace interactions do not create a hostile work environment). One of the elements a plaintiff must allege for a hostile work environment claim is that "the harassment was based on her protected status." *See, e.g.*, *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (dismissing hostile environment claim where "Montgomery never made any derogatory comments about race or age, and nothing about his conduct suggests it was based on these factors.").

Plaintiff does not allege that any of her supervisors, or even any other co-workers, made age-based comments suggesting discriminatory intent. In fact, at least as to Plaintiff's initial supervisor, Ms. Harris, Plaintiff attaches documents in which she alleged to the EEOC that Ms. Harris subjected younger co-workers to similar abuse and mistreatment. ECF 1 at 19; *see also id.* at 18 (describing the harassment from Ms. Harris as "withholding reports, failing to assist me in getting a client apprehended, playing games about getting my caseload scanned and breaking my

personal bookcase in my office" and the harassment from Mr. Harris as "insulting me, withholding my work, approving my work in a grossly untimely manner and having me placed on admin leave unnecessarily"). Thus, even taking all of Plaintiff's allegations of poor treatment as true, the allegations do not demonstrate any connection between her mistreatment and her age, as required to establish a hostile work environment claim.

**B. Age-Based Discriminatory Treatment Claim**

The Age Discrimination in Employment Act ("ADEA") proscribes discrimination by an employer against an employee because of the employee's age. *See* 29 U.S.C. §§ 621-34. To prove an age discrimination claim, the employee "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)). In other words, age discrimination must have been the only motivation, not just one of several motives, for an employer's decision to take an adverse employment action against the employee. *Id.*

For most of the actions Plaintiff alleges her employer took against her, she fails to allege that any similarly situated younger person was treated differently, which is a necessary component of an age discrimination claim. *See Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010) (listing as one of the elements "different treatment from similarly situated employees outside the protected class."). For example, as to her allegation that she received a "lower-than-normal" performance evaluation when transferred under the supervision of Mr. Harris and her allegation that she received a level 1 reprimand for calling the police to the workplace and threatening to file charges against a supervisor, she fails to allege that younger individuals received

better evaluations from Mr. Harris under similar circumstances, or received lesser discipline for similar conduct.[2]

The sole exception is Plaintiff's allegation that she was transferred to another workplace after complaining about mistreatment from Ms. Harris. She expressly alleges that younger employees who made similar allegations at a later date were not transferred. ECF 1 at 19. Although, in that context, Plaintiff adequately alleges that she was treated differently from similarly situated younger colleagues, the Complaint does not adequately allege that her transfer to a different worksite constituted an adverse employment action. "Absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) (internal citations omitted). Plaintiff's Complaint, as pled, does not contain any facts about the transfer that would constitute an adverse employment action.[3] *See, e.g.*, ECF 1 at 4 ("Director Martha Danner transferred me

---

[2] In fact, while not abundantly clear, it appears that Plaintiff contends that the performance evaluation and reprimand were retaliatory, not that they were examples of situations where she received disparate treatment from younger co-workers due to her age.

[3] In Plaintiff's Opposition to the Motion to Dismiss, she proffers certain additional facts about the effect of the transfer to a new office on her work. ECF 12 at 3. Those factual assertions are not properly considered by this Court in evaluating the pending motion to dismiss. *See CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (discussing the "Four Corners Rule" limiting federal courts evaluating a 12(b)(6) motion to considering the complaint itself, any documents attached to the complaint, and documents integral to and explicitly relied on in the complaint if the authenticity is unchallenged); *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1994) *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (explaining that Plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"). This Court does not reach the issue of whether the facts alleged in Plaintiff's opposition would suffice to make the transfer into adverse employment action, but notes some inconsistency between the suggestion that the transfer caused Plaintiff to experience transportation difficulties and the allegation in the Complaint that "the field office where I work began

out of the building where I was working without legitimate reason one month after I filed an EEO complaint."); *id.* at 19 ("After I filed an EEOC complaint through the state on 10/15/19, DPSCS Case Number 2019-10-01476, I was transferred to another building."). The allegations only state the fact of the transfer and do not establish any change in compensation, job title, or duties, or other detrimental effect on the conditions of Plaintiff's employment.

As presently pled, then, Plaintiff's Complaint has not stated a plausible claim of age-based discrimination, and those claims will be dismissed without prejudice.

**C. Age-based Retaliation Claim**

Plaintiff also has not stated a plausible retaliation claim under the ADEA. She alleges, and has attached a letter from the internal EEOC to confirm, that she filed a complaint in October 2019 about her treatment by Ms. Harris. She does not allege, however, that she told the EEOC that she was being mistreated because of her age.[4] Accordingly, she has not alleged that she engaged in any protected activity relating to a claim of age-based discrimination or "opposed any practice made unlawful" by the ADEA. *See* 29 U.S.C. § 630(d); *see also Lauth v. Covance, Inc.*, 863 F.3d 708, 717 (7th Cir. 2017) (general complaints, not based on age, are not protected activity under the ADEA); *Blizzard v. Marion Tech. College*, 698 F.3d 275, 288-89 (6th Cir. 2012) (same); *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002) ("A plaintiff need not establish that the conduct [he] opposed actually constituted an [ADEA] violation. But a

---

teleworking around November of 2019," the same month when Plaintiff was transferred. ECF 1 at 20.

[4] She does attach an EEOC Inquiry sheet listing "Age" as a "Reason for Complaint," ECF 1 at 16, but the date of that submission was August 6, 2020 and referred to an incident on July 2, 2020, well after the alleged retaliatory conduct such as her office transfer or lower performance evaluations, both of which occurred in November 2019. It appears, then, that the attached inquiry sheet relates to second EEOC complaint and not the operative complaint from October, 2019.

complainant must allege the predicate for a reasonable good faith belief that the behavior [he] is opposing violates the [ADEA].") (citations omitted).  The basis of her original EEOC charge is not alleged or established anywhere in her Complaint.  *See, e.g.*, ECF 1 at 4 (stating only that she informed the EEO about "discrimination in the workplace").  Similarly, while her Complaint references other complaints Plaintiff made to management regarding her treatment in the workplace, it does not allege that any of those informal complaints suggested age discrimination as a cause.  Thus, Plaintiff's ADEA retaliation claims also will be dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, DPSCS's Motion to Dismiss, ECF 10, will be GRANTED. Plaintiff's claims will be dismissed without prejudice and this case will be closed, subject to reopening if the claims are properly amended to meet the legal requirements described above.  A separate Order follows.

Dated:  June 14, 2021                                             /s/
                                                                  Stephanie A. Gallagher
                                                                  United States District Judge